UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**SCOTT E. SPATES**,

                Plaintiff,

v.                               **Case No. 16-cv-160-pp**

**DR. SAUVEY,**

                Defendant.

---

### DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2), DENYING AS PREMATURE THE PLAINTIFF'S MOTION FOR AN ORDER OBTAINING AFFIDAVITS (DKT. NO. 11), DENYING THE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 12), AND SCREENING THE PLAINTIFF'S COMPLAINT

---

The plaintiff, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant violated his civil rights. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2), denies the plaintiff's discovery motion as premature (Dkt. No. 11), denies without prejudice the plaintiff's motion to appoint counsel (Dkt. No. 12), and screens the plaintiff's complaint (Dkt. No. 1).

### I.     MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff

1

pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 16, 2016, the court ordered the plaintiff to pay an initial partial filing fee of $10.10. Dkt. No. 4. The plaintiff paid that fee on March 21, 2016. Accordingly, the court grants the plaintiff's motion for leave to proceed *in forma pauperis*, and will allow him to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.  SCREENING OF THE PLAINTIFF'S COMPLAINT

### A.  Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is

2

more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual

3

allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   Facts Alleged in the Complaint

The complaint alleges that, on August 10, 2014, a nurse (not a defendant) transported the plaintiff to health services in a wheelchair after he complained that he could not walk. Dkt. No. 1 at 3. The plaintiff states that, after the defendant "pretended to examine" him, she told him she knew what the problem was and would order medication to fix the problem. Id.

The plaintiff alleges that "immediately" after the defendant spoke with him, she informed the supervising lieutenant (not a defendant) that the plaintiff "could walk and no wheelchair is needed." Id. at 3-4.  The first-shift sergeant informed the plaintiff of the defendant's comments, and the plaintiff "immediately" wrote to the security director (not a defendant) to complain and to explain that he could not walk. Id. at 4-5. He told the security director that

4

while the defendant agreed with him on the "face to face sick call," she told security that the plaintiff could walk, and did not need the chair. Id. at 5. (The plaintiff does not explain whether the security director responded or whether he was permitted to continue to use a wheelchair.)

On August 14, 2014, the plaintiff was called to health services. Id. He was not permitted to use a wheelchair; the plaintiff describes the walk to health services as a "long and painful journey." Id. The plaintiff alleges that he did not make this journey because the defendant wanted to conduct an examination or a checkup. Rather, upon arriving at health services, the defendant allegedly stated, "Mr. Spates I am sending you to the Hospital and in an hour and a ha[lf] or two hours the hospital [is] going to tell you the same thing, so when you get back, you can deal with the white shirts (security supervisor[s])." Id.

The plaintiff states that in less than twenty-four hours at St. Vincent Hospital, he had emergency spinal and nerve surgery. Id. The plaintiff indicates that in late December 2015, he was talking with one of his doctors about what he'd had to go through to end up getting to St. Vincent's and having the surgery. He indicates that this particular doctor told him that all doctors have a responsibility to improve their patients' health, and not to "Delay, Disregard, Ignore, Be Ineffective Intentionally, or pretend to give examination or checkups." Id. at 5-6. The plaintiff alleges that another of his doctors said essentially the same thing on January 29, 2016. Id. at 6.

For relief, the plaintiff asks for $20.5 million dollars. Id. at 7.

5

Case 2:16-cv-00160-PP    Filed 05/31/16    Page 5 of 12    Document 15

C.  Analysis of Alleged Facts

To state an Eighth Amendment claim based on deficient medical care, a plaintiff must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (citing Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006)). A medical need is considered sufficiently serious if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011) (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). The Supreme Court has held that to prove that a defendant acted with "deliberate indifference," a plaintiff must prove more than just negligence, but does not have to prove that the defendant acted with the purpose of harming the plaintiff or with knowledge that harm would result; it is the equivalent of acting recklessly. Farmer v. Brennan, 511 U.S. 825, 835-36 (1994).

At this early stage of the case, the plaintiff has alleged sufficient facts to allow him to proceed on a claim that the defendant was deliberately indifferent to his serious medical needs. The plaintiff alleges that he could not walk without extreme pain (if at all) and that the defendant failed to properly examine him. He states that she did not send him to the hospital until about four days later—and then only because she told him that the hospital would come to the same conclusion she'd come to (that he could walk and didn't need

6

a wheelchair)—at which time he was admitted for emergency surgery. These allegations are sufficient to state an Eighth Amendment claim.

### III. MOTION FOR AN ORDER TO GET AFFIDAVITS

The plaintiff has filed a motion, indicating that he'd like to get some affidavits from two correctional officers. Dkt. No. 11. He indicates that he has a list of questions he'd like to ask each of these officers. <u>Id.</u> at 1. The plaintiff indicates that he doesn't have a lawyer, that he doesn't know anything about the law, and that he'd like to be prepared for the defendants' motion for summary judgment. <u>Id.</u>

The court will deny the plaintiff's motion without prejudice, as premature and unnecessary. Until a court screens a *pro se* prisoner's complaint, the defendant does not even know the plaintiff has sued her. Once the court decides to allow a prisoner plaintiff to proceed on a claim, the court then orders that the complaint be served on the defendant. After the defendant receives the complaint, she has a deadline by which either to file an answer to the complaint, or file some other motion. Once the defendant, through her lawyer, answers the complaint, the court issues a scheduling order. This order includes deadlines for completing discovery. At that point, the plaintiff may serve his discovery demands on the defendant's lawyer; the defendant has an obligation under the Federal Rules of Civil Procedure to respond to those demands. In other words, the plaintiff will have the opportunity to submit the questions that he wants to ask, and to request other discovery materials. It is

7

just too soon for him to do so at this time, because the defendant has not been served with the complaint.

The court also notes that the plaintiff has filed requests for medical information, directed at Doctors Westergaard and Harrison, with the court. Dkt. Nos. 13 and 14. These requests are, like the one discussed above, premature. In addition, when the plaintiff files a request like this with the court, only the court and, if the defendant has been served, the defendant are able to see it. Dr. Westergaard and Dr. Harrison cannot see the docket, and don't know that the plaintiff has filed these requests. As the court indicated above, once the court issues the scheduling order, the plaintiff may serve—directly on the lawyer for the defendant—any discovery requests he may have.

**IV. MOTION TO APPOINT COUNSEL**

The plaintiff also has filed a motion asking the court to appoint counsel to represent him. Dkt. No. 12. He indicates that his imprisonment will make it hard for him to litigate, that his case is complex, that he has limited access to the law library and that he doesn't have knowledge of the law. Id. at 1. He indicates that he's tried to find a lawyer—he has mailed out nineteen lawyer asking them to represent him. Id. at 2. (He attached to the motion responses from some of those lawyers. Dkt. No. 12-1.) He states that he doesn't have access to witnesses (particularly at St. Vincent's), and that he will need expert witness testimony. Id. at 2.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696

8

(7th Cir. 2013); 28 U.S.C. §1915(3)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case—legally and factually—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The letters that the plaintiff attached to his motion to appoint counsel demonstrate that he has satisfied the initial Pruitt requirement; that is, he has made a reasonable effort to find counsel on his own. The court turns to whether the plaintiff's case is so complicated, either legally or factually, that he isn't capable of presenting it himself.

Almost every inmate who files a lawsuit asks the court to appoint a lawyer. Most of them have no money, have no legal training, cannot afford a lawyer, and have only limited access to the law library. Many of them have medical issues. The court does not have the resources to pay lawyers to represent everyone who asks, and there are not enough volunteer lawyers to provide counsel for everyone who asks. This means that the court is able to

9

appoint counsel only in those cases where the issues have become so complicated that the plaintiff cannot explain them himself.

At this point, the plaintiff appears very competent to present the issues in his case himself. He has laid out, clearly and succinctly and in legible form, the facts of the case. The court understands his claim. The next step will be for the defendant to answer or otherwise respond, and then for the court to issue the scheduling order. There may come a point in the case where the plaintiff becomes unable to handle the legal issues himself. If and when that point comes, he can renew his request that the court appoint counsel.

### IV. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2). The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $339.90 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this action.

The court **ORDERS** that the plaintiff may proceed on his deliberate indifference claim against defendant Dr. Sauvey.

The court **DENIES AS PREMATURE** the plaintiff's motion for an order to get affidavits. Dkt. No. 11.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 12.

The court **ORDERS** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on defendant Sauvey.

The court **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendant Sauvey shall file a responsive pleading to the complaint within **sixty (60) days** of receiving electronic notice of this order.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The

plaintiff should also retain a personal copy of each document filed with the court.

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send copies of this order to the warden of the institution where the inmate is confined.

Dated in Milwaukee, Wisconsin this 30th day of May, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge