UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SCOTT E. SPATES,

                Plaintiff,

v.                                      **Case No. 16-cv-160-pp**

DR. SAUVEY,

                Defendant.

---

**DECISION AND ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. NO. 39), DENYING THE PLAINTIFF'S MOTION FOR MATERIAL EVIDENCE (DKT. NO. 43), DENYING THE PLAINIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 51), AND DISMISSING THE CASE.**

---

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant violated his civil rights at the Green Bay Correctional Institution. Dkt. No. 1. There are several pending motions: the defendant's motion for summary judgment based on the plaintiff's failure to exhaust administrative remedies, dkt. no. 39; the plaintiff's motion for material evidence, dkt. no. 43; and the plaintiff's motion to appoint counsel; dkt. no. 51. This decision and order resolves the motions and dismisses the case.

## I.    PROCEDURAL BACKGROUND

The plaintiff filed his original complaint on February 12, 2016, and named only one defendant, Dr. Sauvey. Dkt. No. 1. The court screened that complaint, and allowed him to proceed on a claim that Dr. Sauvey was

1

deliberately indifferent to his medical needs under the Eighth Amendment. Dkt. No. 15. Dr. Sauvey answered that complaint, dkt. no. 21, and the court issued a scheduling order requiring parties to file summary judgment motions no later than December 9, 2016, dkt. no. 26.

On August 22, 2016, the plaintiff asked the court to allow him to file an amended complaint, so that he could identify the "Doe" defendants. Dkt. No. 31. Dr. Sauvey did not oppose this request. Dkt. No. 32. So on September 1, 2016, the court granted the plaintiff leave to file an amended complaint, and required him to file it by September 30, 2016. Dkt. No. 33.

At this point, Dr. Sauvey asked the court to stay the scheduling deadlines it had earlier set—the deadlines for completing discovery and filing dispositive motions. Dkt. No. 34. The defendant's basis for this request was that she believed that the plaintiff had failed to exhaust his administrative remedies before bringing the lawsuit. Id. The defendant wanted to file a summary judgment motion on that issue alone, and asked the court to allow her to do so by October 7, 2016. Id. She asked the court to stay all other deadlines until she could bring this motion, noting that it might be dispositive on all other issues. Id. The court granted that request, staying all deadlines other than the deadline for the defendant to file a summary judgment motion on exhaustion, and set a schedule for the parties to brief that issue. Dkt. No. 36.

A week later, the plaintiff filed his proposed amended complaint. Dkt. No. 37. The amended complaint named Lt. Van Gheems and Sgt. Kaphingst as new

2

defendants, but otherwise re-asserted his Eighth Amendment deliberate indifference claim. Id.

Dr. Sauvey timely filed her motion for summary judgment on the exhaustion claim. Dkt. No. 39. Some ten days later, the plaintiff filed a "Motion for Material Evidence—Rules." Dkt. No. 43. The motion stated that the plaintiff needed a copy of the Wisconsin Department of Corrections' rules governing "Temporary Placement" in order to respond to defendant's exhaustion arguments. Id. Specifically, the plaintiff sought a copy of the rules to show that he did not have access to certain items, such as inmate grievance forms, during the time that he was in the hospital between August 15 and September 3, 2014. Id.

Dr. Sauvey responded to the motion for material evidence by asserting that the fact that the plaintiff was in the hospital between August 15 and September 3, 2014 was irrelevant; the plaintiff didn't miss the deadline by a few days, or even a few weeks—"he missed it by over a year." Dkt. No. 46 at 2. She argued that the plaintiff could have filed his grievance in September 2014 after his release from the hospital—he filed others during that time—but instead, he waited over a year to file it. Id.

In response, the plaintiff told the court that he was "99.99% sure" that he didn't need to file an inmate grievance at all, given the fact that he was in the hospital during the fourteen-day grievance period mandated by D.O.C. rules. Dkt. No. 48 at 2. He explained that he had filed the complaint in December 2015 just to cover the remaining 00.01% chance. Id. He reiterated

3

that he needed a copy of the inmate hospital rules, and that the D.O.C. wouldn't give them to him without a court order. Id. Finally, he argued that the question wasn't whether he could have filed his grievance at some other time—the D.O.C. rules restricted the grievance period to fourteen days after the incident, period. Id. at 1.

Since then, the parties have fully briefed the motion for summary judgment on exhaustion. Dkt. Nos. 39, 44, 49. The plaintiff also filed a motion asking the court to appoint counsel to represent him at the summary judgment hearing, dkt. no. 51; a statement reiterating how much he needs the D.O.C. rules, dkt. no. 52; and letter, saying that he hasn't heard anything from the court, and wondering what he ought to be doing now, dkt. no. 53.

## II. THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

A.  Facts[1]

On August 10, 2014, the plaintiff went to the Green Bay Correctional Institution's Health Services Unit ("HSU") for an appointment with Dr. Sauvey. Dkt. No. 1 at 3. Nurse Hutter (not a defendant) took the plaintiff to the appointment by wheelchair because the plaintiff could not walk. Id. At the appointment, Dr. Sauvey "pretended to examine" him, stated that "she kn[e]w what the problem [wa]s," and that she "would order the medication needed to

---

[1] The court takes facts in this section from the "Defendant's Reply to Plaintiff's Response to Defendant's Proposed Findings of Facts," Dkt. No. 50, and the plaintiff's sworn complaint, Dkt. No. 1, which the court construes as an affidavit at summary judgment. Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996). Where the plaintiff fails to cite evidentiary material to object to the defendant's proposed facts, those facts are deemed admitted for the purpose of deciding summary judgment. See Civ. L. R. 56(b)(2)(B)(i) and (b)(4).

fix the problem." Id. Instead of following through on her statements, Dr. Sauvey "immediately" informed the supervising lieutenant (not a defendant) that the plaintiff "could walk and no wheelchair is needed." Id. at 3-4.

A short time later, the first-shift sergeant (not a defendant) told the plaintiff that Dr. Sauvey stated he did not need a wheelchair and could walk. Id. at 4. The plaintiff "immediately" wrote to the security director (not a defendant) to explain that he could not walk. Id. at 5. The plaintiff provides no further information on whether the security director responded, or what happened with his request for a wheelchair.

Four days later, on August 14, 2014, HSU called the plaintiff to the clinic to see Dr. Sauvey, but due to her prior orders, the plaintiff could not use a wheelchair to get there. Id. at 5. The plaintiff's walk to HSU was a "long and painful journey." Id. Once he arrived at HSU, Dr. Sauvey stated that she was sending the plaintiff to St. Vincent Hospital later in the day, and that "the hospital is going to tell you the same thing." Id. She also stated, "you can deal with the white shirts (security supervisors)" upon returning. Id. At St. Vincent Hospital, the plaintiff underwent emergency spinal and nerve surgery, and both parties agree that he was in the hospital recovering from that surgery until early September. Dkt. No. 44; Dkt. No. 46 at 2.

More than a year later, in late December 2015, the plaintiff spoke with Doctor Wheatley (not a defendant) about his difficulties getting to St. Vincent Hospital in August 2014. Dkt. No. 1 at 5-6. Wheatley told the plaintiff that all doctors have a responsibility to improve their patients' health, and that they

5

cannot ignore someone's health problems. Id. Dkt. No. 42-2 at 8. At that point, the plaintiff no longer was housed at the Green Bay Correctional Institution; he was at the Oshkosh Correctional Institution. On December 30, 2015, the plaintiff filed Offender Complaint OSCI-2015-151 regarding Dr. Sauvey's treatment of his injuries in August 2014. See Dkt. No. 42-2 at 8.

The allegations the plaintiff made against Dr. Sauvey in Offender Complaint OSCI-2015-151 are similar to the allegations he made against her in this case. See id. The primary difference is the plaintiff's description of when and why Dr. Sauvey stated that he did not need a wheelchair. In the federal §1983 complaint, the plaintiff stated that Dr. Sauvey "immediately" informed a lieutenant that the plaintiff did not need a wheelchair. Dkt. No. 1 at 3-4. In the inmate grievance complaint, the plaintiff stated that he was on his way back from his appointment with Dr. Sauvey when a lieutenant saw him in a wheelchair. Dkt. No. 42-2 at 8. The lieutenant then called Dr. Sauvey because "GBCI is not wheel-chair accessible." Id. At that point, Dr. Sauvey said to the lieutenant that the plaintiff was "O.K." and did not need a wheelchair. Id.

In any event, the prison's complaint examiner rejected the plaintiff's complaint as untimely. Dkt. No. 42-2 at 2. She explained that under Wis. Admin. Code §DOC 310.09(6), the plaintiff was required to file his offender complaint within fourteen calendar days after the occurrence giving rise to the complaint. Id. The plaintiff failed to comply with that rule (filing the complaint almost fifteen months later), and he did not offer any reason or evidence as to why he could not comply with the rule. Id. The plaintiff requested review of the

6

rejected complaint, and the reviewing authority concluded that the complaint examiner properly rejected the complaint based on failure to comply with the fourteen-day requirement. Dkt. No. 42-2 at 5.

B. Discussion

1. *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). The movant bears the burden of establishing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must designate specific facts that establish that there is a genuine triable fact. Fed. R. Civ. P. 56(e). The court grants summary judgment when no reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2. *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act provides in part that "[n]o action shall be brought with respect to prison conditions under § 1983. . . by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C §1997e(a). The exhaustion rule gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court, and it produces a "useful administrative record" for the district court to

7

Case 2:16-cv-00160-PP   Filed 01/17/17   Page 7 of 12   Document 54

rely on. See Jones v. Bock, 549 U.S. 199, 204 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved much faster by an agency than throught litigation in federal court. Woodford, 548 U.S. at 89.

The Seventh Circuit "has taken a strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process" prior to filing a case in federal court. Id. "If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted. Id. (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."))

To that end, the Seventh Circuit does not recognize a "futility" exception to the exhaustion rule, nor does it recognize a "substantial compliance" exception to the rule. See Perez v. Wis. Dep't of Corr., 182 F.3d 532, 537 (7th Cir. 1999) ("No one can know whether administrative requests will be futile; the only way to find out is to try"); see also Smith v. Zachary, 225 F.3d 446, 452(7th Cir. 2001) (concluding that a "good faith" effort to exhaust administrative remedies is insufficient)). A district court "lacks discretion to resolve the claim on the merits" if the prisoner fails to exhaust administrative remedies. Id. at 535.

In order to properly exhaust administrative remedies through Wisconsin's prison grievance system, inmates are required to file an offender

8

complaint within fourteen calendar days of the event giving rise to the complaint. Wis. Admin. Code §§DOC 310.05, DOC 310.08, DOC 310.09(6). An institution examiner may reject an offender complaint if it fails to comply with the fourteen-day rule. Wis. Admin. Code §§DOC 310.08, 310.09, 310.11(5). A rejected complaint is not exhausted, see Woodford, 548 U.S. at 90-91, and the plaintiff cannot proceed with it in federal court. See Perez, 182 F.3d at 535.

      3.    *Analysis*

The event giving rise to the plaintiff's complaint occurred on August 10, 2014. Thus, under §DOC 310.09(6), the plaintiff would have had until August 24, 2014 to file his offender complaint. Both parties agree that the plaintiff was hospitalized until early September 2014, and did not have access to offender complaints on or before August 24, 2014. The question before the court, then, is whether the plaintiff's hospitalization somehow administrative remedies altogether "unavailable."

Dr. Sauvey asserts that it did not, because the plaintiff *could* have filed the grievance within fourteen days of his return to the prison. The court agrees. See Hernandez v. Dart, 814 F.3d 836, 843 (7th Cir. 2016) (stating that because an inmate was "hospitalized" and "shackled to his hospital bed" during the time period to file his grievance, his time period to file began after he was discharged from the hospital). In Hernandez, the court ultimately allowed the plaintiff to procced with his case because he was not familiar with the inmate grievance process. See id. That is not the case here.

9

The record here shows that the plaintiff was very familiar with the grievance process. He has filed at least fifteen other offender complaints while in prison, see dkt. no. 42-1, and he filed a grievance on September 22, 2014—during the time that he was in the hospital. Id. at 2. The plaintiff did not file the grievance related to Dr. Sauvey until over a year after the events of August 10.

Despite this fact, the plaintiff attempts to assert a statute of limitations, "discovery of harm," type of argument. He asserts that he couldn't have filed the inmate grievance until he spoke with Doctor Wheatley in December 2015, because that was when he realized that he had a legal claim. This argument is not persuasive. The statute-of-limitations "discovery" exception typically applies when an individual discovers that he or she has an *injury*, not when he or she discovers that he has a *legal claim*. See Cancer Found., Inc. v. Cerberus Capital Mgmt., LP, 559 F.3d 671, 674 (7th Cir. 2009) ( "A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations—the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim.") The plaintiff knew, right on August 10, 2014, that he had an injury, because he "immediately" informed the security director that he could not walk. He knew he had an injury four days later, because his walk to HSU was "long and painful." The plaintiff was aware that he had an injury over a year before he talked with Dr. Wheatly. All he learned from Dr. Wheatly was that doctors have an obligation to act on behalf of their patients—something it is hard to believe the plaintiff did not realize before.

10

The plaintiff failed to exhaust his administrative remedies before filing his federal lawsuit. Under Seventh Circuit law, the court must grant summary judgment in favor of defendant and dismiss the case. This ruling moots the plaintiff's other pending motions.

**IV.     CONCLUSION**

The court **GRANTS** the defendants' motion for summary judgment for failure to exhaust administrative remedies (Dkt. No. 39), and **DISMISSES** the case.

The court **DENIES AS MOOT** the plaintiff's motion for material evidence (Dkt. No. 43) and motion to appoint counsel (Dkt. No. 51).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must

be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 17th day of January, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge